**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| NRRM, LLC, | ) | Case No.: |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| PREMIER WARRANTY GROUP LLC | ) | |
| and JOHN DOE | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff NRRM, LLC d/b/a CarShield submits its Complaint for monetary damages and injunctive relief against Defendants.

## INTRODUCTION

1.      This a trademark infringement and false advertising case.

2.      Defendants are direct competitors with CarShield in the auto protection plan space.

3.      One of Defendants' main methods of competition, though is to use advertising agents to unlawfully generate sales of auto protection plans by using the CarShield trademark in internet advertising.

4.      Defendants know that CarShield is the nation's leading provider of vehicle service contracts and auto protection plans, and that CarShield's brand is well-known throughout the country. Knowing these things, Defendants hire advertising agents, known as consumer lead providers, to buy CARSHIELD as a keyword on internet search engines to secure customers searching for CarShield online.

5.      Defendants' relationship with their consumer lead agents is not casual. Based on (i) CarShield's own experience in the industry for 20 years and (ii) its experience enforcing its

CarShield Marks against other competitors who use consumer lead agent to generate leads for auto protection plans by using CarShield marks, CarShield knows that Defendants enter into written agreements with consumer lead agents that create an actual partnership in which Defendants have the right to exercise control over its consumer lead agents' advertising and require those agents to stay within the bounds of the law.

6.      In particular, Defendants' agreements with consumer lead agents provide Defendants with the right to approve of and the right to control the content of its consumer lead agents' advertising on internet search engines and require them to comply with trademark law.

7.      Defendants' agents, with Defendants' full knowledge, oversight and approval, purchase the well-known brand CARSHIELD and related terms as keywords on Google so when a consumer searches for CARSHIELD or CARSHIELD PRICING, just by way of examples, they see a generic sounding "Warranty Reviews," "Top Warranty", "Top Protection Plans", "Save 30% on Car Warranty" and similar ads, and then are deceived into believing they can buy or be directed to a CarShield protection plan if they click on the ad.

8.      But consumers cannot buy a CarShield vehicle protection plan either by clicking on the generic ads. Instead, Defendant Premier gets the customer lead from its agents acting on its behalf and then speaks with consumers on telephone to sell a Premier plan.

9.      Defendants not only knowingly induce and enable its lead generation agents to use CarShield's trademarks in the agents' keyword buying and on-line advertising campaigns, but knows their third party agents use CarShield's trademarks and ratifies the infringing conduct. Defendants obtain significant benefits from their agents' use of CarShield's trademarks in the form of customer leads from consumers searching for CarShield and its products.

10.     Defendants provide their consumer lead agents with significant benefits in the form of payment for the consumer leads, including those consumers expressly searching for CARSHIELD and its products.

11.      As if it is not enough to cause initial interest confusion with buying CARSHIELD as a keyword to generate generic sounding ads, these consumer lead agents also often put CARSHIELD or SHIELD in the ads to further confuse consumers. They sometimes even use phraseology like "SHIELD YOUR CAR FROM REPAIRS" and "CARSHIELD REVIEW SITE" to lure consumers into thinking they can connect with CarShield once they click on that ad. This is all done with Defendants' full knowledge, oversight and approval.

12.     Some of Defendants' consumer lead agents even use a shield logo similar to CarShield's to further confuse consumers.

13.     Adding more insult to injury, some of Defendants' agents, with Defendants' full knowledge, oversight and approval, list CARSHIELD on their website as the 7th best car warranty company. Setting aside how absurd that low ranking is given CarShield is a leader in the industry (which is why competitors buy its name as a keyword), when a customer presses "CONTINUE" and fills out information to "GET A QUOTE" on some of Defendants' agents' websites, after selecting CARSHIELD, Premier is the one who calls the consumer to sell a protection plan, not CarShield. In other words, the consumer lead agent contracts with Premier to steal the lead when a customer selects CarShield.

14.     CarShield's claims include infringement of its federally-registered trademarks under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for false advertising and unfair competition under Section 43(a), 15 U.S.C. § 1125(a), and for substantial and related claims of trademark infringement under the statutory and common laws of the State of Missouri.

## PARTIES

15.     Plaintiff CarShield is a Missouri limited liability company with its principal place of business in St. Charles County, Missouri, within this judicial district.

16.     Defendant Premier Warranty Group LLC d/b/a Premier Auto Protect is a New York limited liability company, with its principal place of business in New York, New York.

17.     Defendant John Doe also owns, operates and/or directs the advertising activities of Premier Warranty Group LLC d/b/a Premier Auto Protect and is being named because it is not yet known who all is behind the unlawful activities alleged in this complaint.

18.     Defendants knowingly participate in and/or use numerous websites that generate significant revenue as a result of unlawful search engine keyword bidding and false advertising throughout the United States, including in Missouri. The exact identity of the owners of those websites and Defendants' third party consumer lead agents are in Defendants' possession, custody, and/or control, and will be sought and obtained during discovery.

## JURISDICTION

19.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338 and 1367, because CarShield asserts claims for trademark infringement, unfair competition, and false advertising under the Lanham Act, as well as common law and state statutory infringement claims.

20.     This Court has personal jurisdiction over Defendants because Defendants and Defendants' agents promote, and offer for sale VSCs that compete directly with those offered by CarShield in this District using CarShield's trademarks. Additionally, this Court has personal jurisdiction over Defendants pursuant to the Missouri's Long Arm Statute, Mo. Rev. Stat. § 506.500. Specifically, Defendants' and Defendants' agents' acts constitute the commission of

tortious actions within the State of Missouri that impact or affect residents of the State of Missouri. Defendant Premier generates significant revenue in Missouri from these practices.

21. Venue in the Eastern District of Missouri is proper pursuant to 28 U.S.C. § 1391 because Defendants' misconduct alleged herein occurred within and caused harm in this District. At all relevant times, Defendants committed tortious acts within this District that impact or affect residents of this District.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### A.    CarShield's Trademark Rights

22. CarShield has served as the nation's leading seller of VSCs for many years – protecting millions vehicles and drivers. CarShield's vehicle protection specialists help drivers around the country choose the right coverage for them from CarShield's selection of plans for their vehicle.

23. In connection with its VSCs sold throughout the United States, CarShield utilizes and owns a set of federally-registered trademarks.

24. CarShield's federally registered marks include: (i) its United States federal trademark registration for the standard character mark CARSHIELD® (Reg. No. 5,133,928, issued by the United States Patent and Trademark Office ("USPTO") on January 31, 2017) for "[v]ehicle service contracts on vehicles manufactured by others for mechanical breakdown and servicing"; (ii) its United States federal trademark registration for the standard character mark CARSHIELD.COM® (Reg. No. 5,092,752, issued by the USPTO on November 29, 2016) for "[v]ehicle service contracts on vehicles manufactured by others for mechanical breakdown and servicing"; and (iii) its United States federal trademark registration for its design mark in connection with the following logo (Reg. No. 7,730,607, issued by the USPTO on March 18, 2025):



25.    CarShield also owns the United States federal trademark registration for its design mark in connection with the following logo (Ref. No. 7,758,768, issued by the USPTO on April 15, 2025):



26.    CarShield also owns the common law rights to these federally-registered marks throughout the U.S., including Missouri.

27.    The trademarks above shall collectively be referred to as the "CarShield Marks" or "Marks."

28.    CarShield has been using the CarShield Marks in commerce to market VSCs continuously since at least as early as 2016.

29.    Through extensive advertising, marketing, and promotion efforts, CarShield has generated a significant amount of goodwill and consumer recognition in its CarShield Marks. The established and continued success of CarShield's VSCs affiliated with its CarShield Marks can hardly be overstated. As recently as February 2024, CarShield earned recognition as the "Most

6

Trusted Brand" in the United States by Newsweek and BrandSpark. CarShield likewise has an A+ rating and accreditation from the Better Business Bureau.

30.     CarShield has significantly invested millions of dollars in marketing, advertising, and promoting its CarShield Marks in connection with the sale of vehicle service contracts to consumers. CarShield spends nearly $60 million per year in television advertising alone.

31.     The CarShield Marks are prominently displayed on CarShield's website, www.carshield.com, allowing customers to receive quotes for VSCs.

32.     CarShield is repeatedly recognized by its community and many different organizations both locally and nationally.

33.     CarShield has been featured on thousands of TV and radio stations across the country backed by some of the biggest names in the entertainment and news industries. CarShield partners with well-known celebrities such as Ice-T, Chris Berman, Ric Flair, Vivica Fox, Michael Chandler and Pat Maroon to help promote its brand and products, and CarShield's advertisements have been featured on popular television networks including, without limitation, ABC, ESPN, Lifetime, CNN, Fox News, USA Today, CNBC, and the NFL Network.

34.     CarShield has featured its CarShield Marks in tens of thousands of print, television, and radio advertisements to market its VSCs. CarShield also invests substantial amounts of money for its sponsorship of largely attended events, including sponsoring professional sports teams such as the St. Louis Cardinals, St. Louis Blues, sponsoring its own CarShield vehicle and driver on the NASCAR circuit, and having a CarShield sponsored stadium (CarShield Field) for minor league baseball just outside of St. Louis. CarShield is also advertising partners with the NFL's Jacksonville Jaguars, as well as with Major League Baseball (MLB), the National Hockey League (NHL), and the National Football League (NFL).

35.    By virtue of CarShield's extensive, continuous, and exclusive use of the CarShield Marks to advertise, promote, distribute, and sell VSCs, consumers across the United States recognize the CarShield Marks and CarShield brand as belonging to CarShield, associate the services offered and sold under the CarShield Marks exclusively with CarShield, and recognize and trust CarShield as the source of the VSCs offered for sale and sold under the CarShield Marks.

36.    CarShield's Marks have earned valuable goodwill from being widely recognized, associated with, and identified by consumers and the trade.

37.    CarShield's Marks are well-known and immediately recognizable to consumers.

**B.    Defendants Knowingly, Intentionally, and Systematically Engage Third Party Agents to Purchase CARSHIELD and Combinations of CarShield's Marks as Keywords on the Largest Internet Search Engines to Direct Traffic to Their Generic Advertisements for Car Warranties and Best Car Warranties.**

38.    In order to benefit from the substantial goodwill CarShield established in its CarShield Marks, Defendants, through their third party agents and affiliates knowingly, intentionally and continuously purchase and bid for the keyword "CARSHIELD", or variations thereof, on the largest and most used internet search engines so that when consumers search for CARSHIELD, Defendants' generic ads for car warranties appear at or near the top in the sponsored ad section of search results.

39.    Specifically, Defendants have entered into contracts with multiple third party agents which own and operate at least the following generic-sounding "car warranty" websites that generically advertise online using the CarShield Marks in search engine keyword buying to generate customer leads for Defendants. Examples include Reviews.comparecarwarranties.com, and Autowarrantyreviews.com.

40.    By way of its agreements with its third party agents, Defendants maintain the right to control those agents, their advertising, and their keyword usage.

8

41.     Defendants' agents' sponsored advertisements on Google, as described above, only advertise general VSCs not specific or distinctive ones. Nothing in their ads lets a customer know they are not getting CarShield.

42.     Typical generic-sounding internet ads for these auto or car warranty sites on major internet search engines such as Google, Bing Sponsored Sites, and Yahoo! that send customer leads to Defendants after a customer searches for CARSHIELD include:











43.     Defendants specifically and intentionally induce, enable, and work with their consumer lead agents to use CARSHIELD keywords and present consumers with generic-sounding ads (and in some cases, worse, using the brand CARSHIELD in ads) and website names with automotive or car warranty titles, or the generic "best warranties" or "top warranties" in order to trick, deceive and confuse consumers who are searching for CarShield's products or services into believing that they can find CarShield's well-known, legitimate VSC's on those sites.

44.     But Defendants and their third party agents' generic ads and websites do not allow consumers to obtain CarShield's VSCs, even though that is exactly that the consumers were looking for in the first place.

45.     Defendants contract with their customer lead providing agents, which use generic-sounding and/or misleading advertisements, because Defendants and their third party agents work

together to trick consumers into continuing to click through to the website believing that they can obtain CarShield protection plans.

46.    Defendants' lead agents purposefully do not label or indicate that their generic ads direct a customer ultimately to Defendants, which induces the third party lead agents to use CarShield's Marks by paying the third party lead agents for these consumer leads generated based on the recognition and good will built up over the years in CarShield's well-known Marks and associated VSCs. They dupe consumers by masquerading as a gateway to and source for CarShield VSCs, when in fact the advertised websites prevent consumers from linking to CarShield's websites and obtaining CarShield VSCs.

47.    Consumers reach those sites by specifically requesting CarShield on internet search engines, and without searching at all for Defendants.

48.    A customer who sees Defendants' agents' advertisements is likely to be misled into clicking on them when searching for CarShield products and services, unaware that they will be taken to websites that sell VSCs sold by Defendants and to websites that either do not offer or do not even make it possible to obtain VSCs sold by CarShield.

49.    Defendants know their third party lead agents purchase CARSHIELD and related keywords, have the right to control what keywords its third party lead agents bid on and purchase (and right to control its third party agent advertising in general), but fail to stop the infringing use of CarShield's Marks.

50.    Instead, Defendants facilitate, enable and induce the third party lead agents to bid on CarShield's Marks because Defendants know that CARSHIELD keywords will generate more clicks and result in more customer leads. Defendants' third party lead agents receive payment from Defendants based on the number of leads they provide to Defendants, so the third party lead agents

12

are highly incentivized to use, bid on and/or purchase the CARSHIELD keywords because they are most profitable.

51.     Once the customer clicks on the generic ad they are taken to Defendants' agents' carefully constructed scheme of false and deceptive advertising. Consumers cannot possibly know they are about to be solicited by Defendants because their agents' goal is to funnel leads to CarShield's competitors.

52.     Defendants, through their agents, who act in conjunction with and on behalf of Defendants, thus use CarShield's Marks to generate initial interest from consumers in car warranties or VSCs, and then directs those unsuspecting consumers to carefully constructed websites where consumers are confused and deceived into mistakenly believing they are learning about, providing personal information for, and ultimately obtaining quotes for CarShield VSCs. In reality, those consumers are directed to Defendants' VSCs, at least initially believing they are CarShield VSCs after searching and viewing the ads.

53.     In addition to providing Defendants' with the right to control their third party agents' advertising, Defendants' agreements with these agents also require the agents to not violate trademark, unfair competition, and false advertising laws. Yet, Defendants do nothing to enforce those requirements as they sit back and benefit from their unlawful scheme to deceive consumers about the source of products.

54.     Defendants, through their agents, use CarShield's Marks to falsely advertise that consumers can obtain CarShield VSCs through those generic websites, and to create the false impression that they can buy a CarShield VSC from the website.  None of that is true, and it all misleads and deceives customers. It is impossible for consumers to obtain the very thing they were searching for in the first place.

13

55.     In numerous instances Defendants' agents buy combinations of "CarShield" as keywords to generate generic sponsored ads, claiming customers are selecting the "best" or "top" auto warranty, when Defendants know full well that CarShield is the leading VSC company in the country. This is purely intended to dupe customers.

56.     Defendants and their agents have had actual notice of CarShield's trademark rights in the CarShield Marks through CarShield's trademark registrations for the Marks.

57.     Defendants and their agents also had actual notice of CarShield's trademarks rights, given CarShield's widespread use of its well-known CarShield Marks and CarShield brand.

58.     Despite actual notice of CarShield's trademark rights in its Marks, Defendants, through their agents working in cooperation with and on behalf of Defendants, have used, and continue to use, the CarShield Marks and confusingly similar terms, marks, phrases and names to advertise VSCs, auto warranty, and VSC providers that compete directly with CarShield.

59.     With Defendants' full knowledge and ratification, and despite Defendants' right to control its agents' advertising and keyword buying, Defendants' agents' continuous and systematic practice of buying CarShield-based keywords and the resulting generic "car warranty" and "best car warranties" sponsored ads, as well as Defendants' (through their agents) infringement of CarShield's shield logo, are causing significant confusion among consumers, including initial interest confusion and initial source confusion as to the source of VSCs and auto warranties offered in the ads above.

60.     Defendants' and their agents' conduct is so bad that they even sometimes intentionally use logos that are confusingly similar to CarShield's trademark protected shield logo. CarShield uses its shield checkmark logo in conjunction with the "CarShield" marks most or all of the time.  CarShield's shield and checkmark logo is used in all of CarShield's print, television

and visual media advertising, is featured with the CarShield mark in CarShield's advertising in stadiums, and on NASCAR vehicles and clothing. It is extremely well-known and associated by consumers as designating CarShield as the origin of VSCs with the shield checkmark logo.

| DEFENDANTS' AGENTS: | CARSHIELD: |
| --- | --- |
|  | |

61.    Some of Defendants' third party agents use phrases such as "SHIELD YOUR CAR" in ads, and others place the CARSHIELD REVIEWS in ads to lure in customers even though a consumer cannot buy a CarShield plan. An example is shown below:









**C.**    **Defendants' Knowingly Engage These Third Party Lead Agents to Falsely Advertise**

62.    Some of Defendants' agents', with Defendants full knowledge and the right to control those agents' behavior, also falsely advertise to consumers to generate sales for Defendants by including a "GET A QUOTE" or "CONTINUE" button their websites for CARSHIELD but then when a consumer fills out information to get a quote, Premier, not CarShield, is the one who calls the consumer to sell the protection plan. Examples of what a consumer views before Premier calls him or her are shown below:





### D.    Defendants' Conduct is Willful

63.    Defendants' conduct and scheme to hire third party agents to commit trademark infringement on their behalf to generate leads and business for Defendants described herein was and continues to be knowing and willful, intended to unfairly compete with CarShield and steal CarShield's business.

### COUNT I
### Violation of Lanham Act § 32, 15 U.S.C. § 1114 – Infringement of Federally Registered Trademarks

64.    CarShield restates the allegations contained in the preceding paragraphs.

65.    Defendants, through their third party agents acting on Defendant's behalf, continued use of the CarShield Marks in commerce in connection with the offering for sale of VSC products is likely to cause, and has in fact caused, confusion, mistake or deception.

66.    Defendants, through their hired agent guns expressly retained to obtain consumer leads for Defendant by bidding on and purchasing keywords such as CARSHIELD for internet advertising, have and are continuing to reproduce, copy, and colorably imitate the CarShield Marks and apply such reproduction, copy, and colorable imitations to products and/or advertisements intended to be used in commerce in connection with the offering for sale of VSCs in a way that is likely to cause confusion, mistake, or to deceive.

18

67.    Defendants do not have permission to use or hire third party agents to use the CarShield Marks on its behalf and do what Defendants know they cannot do without violating the law.

68.    Defendants' and their agents' use of the CarShield Marks is intentional and willful. Defendants have the right to control their agents' advertising and keyword usage, knows their agents bid on and purchase CARSHIELD and variants of CARSHIELD as keywords for internet search engines, and encourages and rewards their agents' unlawful activities through payments for consumer leads generated as a result of CARSHIELD-related searches. Despite their ability to do so, Defendants do nothing to stop their third party agents' use of CarShield's Marks.

69.    Specifically, Defendants through their agents have knowingly, willingly, and intentionally used CarShield's Marks on internet search engines including at least Google, Bing, and Yahoo! to advertise their VSCs in connection with generic sounding websites and/or advertisements purporting to sell various "warranties," including "car warranties" and "vehicle warranties," trading on the substantial goodwill and recognition of CarShield's Marks by consumers in conjunction with VSCs.

70.    Defendants' and their agents' knowing and intentional use of the CarShield Marks in such keyword advertising does, and was intended to cause confusion, to cause mistake, or to deceive consumers about the source of their competing VSCs. Such conduct is likely to lead consumers to fall victim to (at a minimum) initial interest confusion and initial source confusion – believing that the VSCs advertised by Defendants originate from CarShield and/or are associated with, affiliated with, provided by, and/or are endorsed by CarShield.

71.    Trading on the recognition of the CarShield Marks, and knowing CarShield's specific reputation of being the number one trusted brand in its industry category (including selling

VSCs), Defendants knowingly, willfully, and intentionally induced and enabled its agents to use the CarShield Marks in keyword advertising to exploit CarShield's recognition and the substantial time, effort, and expense invested in building the CarShield brand and infringe the CarShield Marks.

72.     Defendants' (including through its agents acting on Defendants' behalf) infringement has caused significant actual confusion and is likely to cause mass consumer confusion.

73.     As a result of the unlawful conduct of Defendants and their hired agents acting on Defendants' behalf, CarShield has been damaged, has suffered irreparable harm, and is likely to continue to suffer irreparable harm unless Defendants' actions are enjoined by this Court. CarShield has suffered substantial damage.

74.     CarShield is entitled to, among other relief, injunctive relief and an award of its actual damages (or, in the alternative, statutory damages pursuant to 15 U.S.C. §1117(c)), Defendants' profits, enhanced damages and profits, costs, and attorneys' fees.

75.     CarShield has been damaged and harmed by Defendants' activities at least in the millions of dollars. The number of leads siphoned away from CarShield, applying CarShield's normal sales conversion rate and the profit per sale, supports this number.

### COUNT II
### Violation of Lanham Act Section 43(a), 15 U.S.C. § 1125(a) – False Designation of Origin and False or Misleading Description of Fact as to the CarShield Marks

76.     CarShield restates the allegations contained in the preceding paragraphs.

77.     Defendants' actions as set forth in this Complaint and Defendants' (including through their agents acting on Defendants' behalf) unlawful use of the CarShield Marks, individually and in combination, violate 15 U.S.C. §1125(a).

78.     Defendants, through their agents acting on Defendants' behalf, with Defendants' complete authorization and over which Defendants maintain the right to control advertising and keyword purchasing/usage, have used and are continuing to use the CarShield Marks without approval and in a manner that has caused actual confusion and is likely to cause confusion – which, at a minimum, is initial interest confusion and/or initial source confusion.

79.     Defendants, through their agents acting on Defendants' behalf, have used and are continuing to knowingly use the CarShield Marks without approval and in a manner that is deceptive as to affiliation, connection, or association of Premier with CarShield.

80.     Defendants, through their agents, have used and are continuing to use CarShield's Marks in keyword advertising that results in generic ads and website promotion that falsely and misleadingly infer those sites as sources of CarShield products, when in fact Defendants' and their third party agents' generic websites are not a source of CarShield's VSCs. Defendants offer competing VSCs and services and, through their contracted agents, compete with CarShield's VSCs and other services. Defendants, through their agents, have used and are continuing to use the CarShield Marks to advertise and to offer for sale competing VSCs in a manner likely to confuse or deceive individuals by misrepresenting that Defendants' competing VSCs are created, authorized, or approved by CarShield, when they are not.

81.     This unauthorized use by Defendants, through their agents acting on Defendants' behalf, in commerce of the CarShield Marks as alleged herein constitutes use of a false designation of origin and misleading description and/or representation of fact.

82.     Upon information and belief, Defendants' conduct is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection or association of Premier with CarShield.

83.     As a result of Defendants' conduct, CarShield has incurred losses to its business and to the value of its marks, lost sales, and other losses for which CarShield is entitled money damages pursuant to 15 U.S.C. § 1125.

84.     CarShield is entitled to, among other relief, injunctive relief and an award of its actual damages, Defendants' profits, enhanced damages and profits, costs, and attorneys' fees.

**COUNT III**
**Violation of Lanham Act Section 43(a), 15 U.S.C. § 1114 – Trademark Infringement of Registered Mark as to the CarShield Logo**

85.     CarShield restates the allegations contained in the preceding paragraphs.

86.     Defendants' actions as set forth in the Complaint and Defendants (including through their agents acting on Defendants' behalf) unlawful use of CarShield's registered Mark as to the CarShield Logo, individually and in combination, violate 15 U.S.C. § 1114.

87.     Defendants', through their agents acting on Defendants' behalf with Defendants' complete authorization and over which Defendants maintain the right to control advertising and keyword purchasing/usage, have used and are continuing to use multiple infringing shield checkmark logos and the CARSHIELD Mark itself without approval in commerce in connection with the offering for sale of VSC products in a manner that has caused actual confusion and is likely to cause confusion, mistake, or deception, at minimum including initial interest confusion and/or initial source confusion.

88.     Defendants, through their agents acting on Defendants' behalf, have and are continuing to knowingly reproduce, copy, and colorably imitate CarShield's proprietary and protected logo without approval and apply such reproduction, copy, and colorable imitation to advertisements intended to be used in commerce in connection with the offering for sale of VSCs in a manner that is deceptive as to affiliation, connection, or association of Premier with CarShield.

89.    Defendants, through their advertising agents acting on Defendants' behalf, are displaying multiple shields that are similar in shape, and which in some cases contain the same inset checkmark as CarShield's proprietary and protected logo.

90.    Defendants, through their agents, even display a shield checkmark logo in conjunction with generic terms such as "Extended Vehicle Warranty" and "Auto Warranty" to confuse and deceive consumers into believing that the source of the "Extended Vehicle Warranty" is CarShield.  The competing VSCs and services Defendants offer and through their contracted agents complete with CarShield's VSCs and other services. Defendants through their agents have used and are continuing to knowingly use the CarShield logo to advertise and to offer for sale competing VSCs in a manner likely to confuse or deceive individuals by misrepresenting that Defendants' competing VSCs are created, authorized, or approved by CarShield, when they are not.

91.    Defendants do not have permission to use or hire others to use CarShield's federally-registered and protected logo.

92.    This unauthorized use by Defendants' through their agents acting on Defendants' behalf in commerce of the CarShield logo or any CarShield Mark as alleged herein constitutes use of a false designation of origin and misleading description and/or representation of fact.

93.    Upon information and belief, Defendants' conduct is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Premier with CarShield.

94.    The actions alleged in this Complaint were committed with knowledge that such imitation does, and was intended to, cause confusion, mistake, or deceive as to the source and origin of the VSCs being offered.

23

95.     Defendants', through their agents, use of CarShield's logo is willful.

96.     As a result of the unlawful conduct of Defendants, including the use of CarShield's logo, CarShield has been damaged, has suffered irreparable harm, and is likely to continue to suffer irreparable harm unless Defendants' and their agents' actions are enjoined by this Court.

97.     CarShield has been damaged and harmed by the infringement of the logos in an amount to be proven.

**COUNT IV**
**Violation of Lanham Act Section 43(a), 15 U.S.C. § 1125(a)– False Advertising and Unfair Competition**

98.     CarShield restates the allegations contained in the preceding paragraphs.

99.     Defendants', through their agents acting on Defendants' behalf with Defendants' complete authorization and over which Defendants maintain the right to control advertising and keyword purchasing/usage, have used and are continuing to use multiple infringing CarShield Marks without approval in commerce in connection with the advertising, offering for sale of VSC products, and providing an option for customers to receive a VSC quote in a false and misleading manner.

100.    Defendants and their agents intentionally mislead consumers into believing that they are requesting a quote from CarShield but in reality they are contacted by Premier.

101.    Upon information and belief, Defendants' conduct is willful and deliberate and is intended to and causes confusion, mistake, or deception as to the origin, affiliation, connection, or association of Defendants with CarShield.

102.    Defendants knew the actions alleged in this Complaint were false and misleading and acted with knowledge that such imitation does, and was intended to, cause confusion, mistake, or deceive as to the source and origin of the VSC quotes and VSC services being offered.

24

103. Defendants' actions as set forth in the Complaint and Defendants (including through their agents acting on Defendants' behalf) unlawful use of CarShield's registered Marks individually and in combination, violate 15 U.S.C. § 1125(a).

104. As a result of the unlawful conduct of Defendants, CarShield has been damaged, has suffered irreparable harm, and is likely to continue to suffer irreparable harm unless Defendants' and their agents' actions are enjoined by this Court.

105. CarShield has no adequate remedy at law to redress these injuries.

**COUNT V**
**Trademark Infringement under Missouri Common Law**

106. CarShield restates the allegations contained in the preceding paragraphs.

107. Through their actions described above Defendants through their agents, acting on Defendants' behalf with Defendants' complete authorization and over which Defendants maintain the right to control advertising and keyword purchasing/usage, use of  the CarShield's Marks in keyword advertising and confusingly similar marks, terms, and phrases, are likely to confuse and mislead consumers into thinking that the competing VSCs advertised on search engines like Google are associated with, provided by, affiliated with, or endorsed by CarShield.

108. Defendants, through their agents hired to act on their behalf and under their control, use of CarShield's Marks and confusingly similar marks, terms, and phrases infringes CarShield's trademark rights, causing significant damages to CarShield in violation of the common law of the State of Missouri.

109. Defendants, through their agents acting on their behalf, knowingly, willingly, and intentionally misused CarShield's common law Marks and confusingly similar marks, terms, and phrases to:

a. injure CarShield's business;

25

    b.       trade on its recognition;

    c.       pass off competing VSCs as CarShield's VSCs; and/or

    d.       confuse and deceive consumers.

110.    Defendants have been and are likely to continue to profit unfairly from their infringing conduct, as described above.

111.    CarShield lacks a complete and adequate remedy at law and will continue to suffer irreparable harm and injury to its goodwill and reputation if Defendants' activities are not enjoined.

112.    CarShield has been damaged and harmed by Defendants' activities in the millions of dollars.

## COUNT VI
## Violation of Mo. Rev. Stat. 44 417.061, 417.066
## (State Trademark Infringement)

113.    CarShield restates the allegations contained in the preceding paragraphs.

114.    Through their actions described above, Defendants' through their agents, acting on Defendants' behalf, with Defendants' complete authorization and over which Defendants maintain the right to control advertising and keyword purchasing/usage, unauthorized use of the CarShield Marks and confusingly similar marks, terms, and phrases in keyword advertising and by use of the logos is likely to mislead consumers into believing that the competing VSCs advertised by Defendants' agents are provided by, endorsed by, authorized by, or affiliated with CarShield.

115.    This has harmed and continues to harm CarShield's business including, without limitation, its reputation and goodwill, and diluted the distinctiveness of the CarShield Marks.

116.    Defendants' , and their agents they hired that act on its behalf and under its control, use of the CarShield Marks and confusingly similar marks, terms, and phrases infringes and dilutes the CarShield Marks, entitling CarShield to injunctive relief pursuant to Mo. Rev. Stat. §§ 417.061 and 417.066.

117.    Defendants' and their agents' wrongful use of the CarShield Marks and confusingly similar marks, terms, and phrases is a deliberate, intentional, and willful attempt to injure CarShield's business, to trade on CarShield's business, and/or to confuse and deceive consumers.

118.    CarShield lacks a complete and adequate remedy at law, and will continue to suffer irreparable harm and injury to its goodwill and reputation if Defendants' activities are not enjoined.

119.    CarShield has been damaged and harmed by Defendants' activities in the millions of dollars.

## PRAYER FOR ALL COUNTS

WHEREFORE, CarShield requests that judgment be entered in its favor and that:

A.    This Court award all damages and other monetary relief available as a result of Defendants' infringement and false advertising, such damages and monetary relief including, but not limited to, actual damages, lost profits, Defendants' profits, statutory damages, treble damages, attorneys' fees, and all other monetary relief available under 15 U.S.C. § 1117, other federal and state laws and otherwise;

B.    This Court enter injunctive relief ordering Defendants, and their successors, assigns, affiliates, employees, partners, and anyone acting in concert with them or at their behest or direction, to:

        1)    Cause their third party advertisers to cease purchasing keywords on search engines that include "CARSHIELD," "CARSHIELD.COM," and/or "CAR SHIELD" or any other confusingly similar term or phrases to generate generic "warranty" advertisements;

2)      Cause their third party advertisers to terminate and disable any and all internet search engine ad word or similar service or program that uses the CarShield Marks or any confusingly similar mark, term or phrase;

3)      Cause their third party agents to input as negative keywords in search engines CARSHIELD and similar names;

4)      Cause their third party advertisers to cease using the CARSHIELD Marks and shield checkmark logos in advertising;

5)      If any of their third party agents do not comply with the directives in 1-4 above, cease engaging said third party agents and cease accepting consumer leads from them;

C.      This Court award CarShield such other and further relief, including costs, as this Court deems just and equitable.

## JURY DEMAND

CarShield hereby demands a jury trial on all issues so triable.

DATED this 3rd day of September, 2025.

By:    /s/*Jeffrey H. Kass*
Jeffrey H. Kass, E.D. Mo. #60672
Georgiana Gnibus, E.D. Mo. #75573
1125 17th St, Suite 500
Denver, CO 80202
Tel: (303) 723-8400
Fax: (844) 670-6009
Email: JKass@dickinson-wright.com
        ggnibus@dickinson-wright.com

*Attorneys for Plaintiff NRRM, LLC dba CARSHIELD*

4930-5422-3663 v27 [105444-62]

28